IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

ALLSEASON ENTERPRISES, LLC,

Plaintiff,

v.

ROUTES ENTERPRISES, BIOCARO
PHARMACEUTICAL CO., LTD, A4EFFORT, BAZAN
LLC, DANDAN TANG, DATH STORE, FANFENTAC
LTD., FB HANDYMAN, GIANTBEAR GLOBAL,
GIBSON'S ESSENTIALS, GP-SHOPPERS, HOME
GOODS, JHNPAKISTAN, JNJEA, LIFEXSTORE, LLC
DIVINE HEALING SEA MOSS, MAZAMART, MDA
LOGISTICS INC, NAQI PRIME INC, NATUREREM,
NODOMO, NUTRI PLUS, ORBER SHOP,
PUFFCOPAL, SHOP WITH BROOKES, TY FAB
WORKS LLC, UGIRL-US, VOLTZAP, ZWQITDS,
ALIWAKEEL11, ANK_STORE, AVIDMARKET,
AYOURMESELL, BCUZOF-YOU-U, BEAUTY-
STORE_8, BETTYSMORNING, BKABEDA, BSM950,
COUNMO, CSGENERALSH, DAVISMD-089,
DISCOUNT DIRECT DEALS 100,
DISCOUNTED_MARKET, DOSTH-HAPPY9,
ECLIPSEEMPORIUM, FILLAPEX,
FREEAFTEREVER2013, FURTUE, GALLENCEN,
GANTY, GLOBALTECH TREASURES INC,
GOODLU-78, GREVIP, GULIYUK-60, GULOPP_SRE,
HANDSOME/DEAL, HELLOYOUNG.STORE,
HKKULE1015, HKT024, IEDION, IMINDSETS1030,
JANAKLEESDEALS, JESSICA'S BOTANICAL
BOUTIQUE, KATTRODRIGUE5, LATNAZA_95, LIVE
LOVE SHOP INSPIRE, LONGGOV-69, LOVE-
ISEVERYWHERE, LYCSTYLE, MATHMADU-
SKYFREE, MAZHUS_3141, MCC-CREATIONS-LLC,
MEEKY, MIN561870, MINGJIE1,
MINHABEAUTYSTORE, NATURBODI, NBSTORE-
NBGOODS, NP-JING7654, NP-MOBILE451, NP-
OPPOER, NP-SHUA3953, ONEDUDESHOP,
OUSSHOP-ONLY-FOR-YOU, PINEAPPLENINJA,
POW-SALE, PURE-STORE_12, QC THE MARKET,
QWICK STOP, RETAILTHERAPY708, ROEE20006,
ROMAKHA_93, S&J DAILY DISCOUNTS,

Civil Action No. 2:25-cv-27

Jury Trial Requested

**FILED UNDER SEAL**

SECURZZZSHOP, SEHASI4998,
SHARPPOINTEDTHINGS, SHELLIYODE_0,
SIMONE_MARKET16, SMARTCHOICE TREND,
SUPERMARKET-K, SYEDAZE-0, SYFAT33,
THE.URBAN.ESSENTIALS, THEVITAMINSHOP23,
THREE-3BROTHERS-INC, TOQIRSHAH,
TRENDYSTICKERS, UCLICKISHIPFL, URIOTE_19,
UROABDUL_0, VISENI-SAUSER ID, WEI_147756,
WESTCOASTGOODZ, WINGSOLUTIONS,
WORLDMART WHOLESALE,
XEMENRY_NATURALS, XILI-9015,
XUETIELONGLONGLONG, YA_124382,
YEROSES198, YOUMISSFHEERH,
YUMINXUSSTORE, ZARANEW, ZUBAIRQU-87,
ANAN FOODS, ANAN HEALTH CARE, ANAN
HEALTHY, ANAN MAKEUP, BAISI LE SEEDS,
BLESSMEET, DINJOO A, GOOD SHOP OF MR
ZHENG, HEALTHBREW ESSENTIALS, HUAFFEI,
JACK SHOPPING MALL, JACK SKY MALL, MOON
CLOUD, RTBLE DIRECT, S580504'SHOP,
SHICHUAN, SHIPINYAO, SLWLKJ, UGTM, ZORN
SKY MALL, and A C MASTERS SA,

                    Defendants.

## COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

Plaintiff hereby sues Defendants, the Individuals, Partnerships, and Unincorporated

Associations identified in the Caption and which are set forth in **Schedule "A"** hereto

(collectively "Defendants").  Defendants have offered for sale, sold, and distributed knock-off

and infringing versions of Plaintiff's Products by displaying, advertising and marketing using

one or more of Plaintiff's copyright registered photos to sell products which closely mimic the

appearance of Plaintiff's genuine products within this district and throughout the United States

by operating e-commerce stores established at least via one of the Amazon.com, eBay.com,

Temu.com, Wish.com, Walmart.com, Alibaba.com and Aliexpress.com marketplaces using their

respective Store Names and Seller Names set forth on **Schedule "A"** hereto (collectively, the

"Seller IDs") ("Infringing or Knock-Off Product(s)").   As set forth below, Defendants are using without authorization Plaintiff's copyrighted Works ("Plaintiff's Works"), and/or Plaintiff's Trade Dress (*as defined below*) and/or Plaintiff's Marks (*as defined below*). More specifically, Defendants are manufacturing, importing, exporting, advertising, marketing, promoting, distributing, offering for sale and/or selling unlicensed and infringing versions of Plaintiff's Products. Some of the Defendants are also engaged in trademark counterfeiting. In support of its claims, Plaintiff alleges as follows:

## NATURE OF THE ACTION

1. ALLSEASON ENTERPRISES, LLC ("AE" or "Plaintiff")  produces, markets, and sells supplements comprising vitamins, minerals, and botanical extracts supporting whole body health.

2. Genuine goods comprising Plaintiff's Marks, Works and Trade Dress (*as defined below*) are widely legitimately advertised and promoted by Plaintiff and unrelated third parties via the Internet. Over the past several years, visibility on the Internet, particularly via Internet search engines such as Google, Yahoo!, and Bing has become increasing important to Plaintiff's overall marketing.

3. Plaintiff sells its original supplements using unique photographs and artwork ("Plaintiff's Works").  Plaintiff has obtained the following copyright registrations on its original photographs used to market and advertise its products: TX 9-367-638, TX 9-388-519, TX 9-388-522, TX 9-388-523, TX 9-389-848, TX 9-389-849, TX 9-394-790 all with the title

"Multimineral Sea Moss Black Seed" published on October 15, 2022.[1]  True and correct copies of the registrations and the deposit copies are attached to the Complaint and marked, respectively, as **Exhibits 3 A – G**.

4. Plaintiff's Products have unique packaging, labels, and designs that are inherently distinct features, including, color, size, and shape selections, that all function as a source identifier for the Plaintiff's Product. The combined distinct features of the Plaintiff's Works all support the copyright registrations issued by the U.S. Copyright Office. Screen shots of the Plaintiff's Amazon Store and Web Site are shown in **Complaint Exhibit 2**.

5. Below are exemplar images of Plaintiff's Products as marketed and advertised using the common law trademark CLEAN NUTRA™  and registered trademarks CLEAN NUTRA & design (U.S. Reg. No. 7031116):   and CLEAN NUTRACEUTICALS & design (U.S. Reg. No. 7031117):  ("Plaintiff's Marks")(True and Correct Copies of the registration certificates are attached hereto as **Complaint Exhibits 4A and 4B**):

---

[1]    As set forth in the Complaint, and proven in **Composite Exhibit 1**, all of the Defendants are infringing on one or more Plaintiff's federal copyright registration and/or trade dress. ("Infringing Products").

 

Other such images and copyrighted photos appear in **Exhibit 2 to this Complaint**.

6. The combined unique features, ornamental, and decorative features of Plaintiff's Product packaging, Plaintiff's Marks, and Plaintiff's Works comprise Plaintiff's Trade Dress[2], including the distinct photographs, the design, the instructions, the packaging, and the unique presentation of the product, all comprise Plaintiff's valuable intellectual property ("IP") and all have become distinct in consumer's minds such that consumers associate all of this IP with Plaintiff's Products.

7. Plaintiff's Marks, Works and Trade Dress have been used in interstate commerce to identify and distinguish Plaintiff's goods. Plaintiff's Marks, Works and Trade Dress have been used by Plaintiff prior in time to Defendants' infringement of the Plaintiff's Marks, Works and Trade Dress. Plaintiff's Marks, Works and Trade Dress have never been assigned or licensed to

---

[2]   Plaintiff's Trade Dress comprises the organization, selection of the text, arrangement  of the elements of the creative artwork and colors for the label, the differently colored spheres containing abbreviations for various vitamins, minerals, and supplements, the black tree shaped background and the distinctly proportioned text. The Trade Dress is distinct and immediately conveys the source of the goods to the consumer.

any of the Defendants in this matter. The Plaintiff's Marks, Works and Trade Dress are symbols of Plaintiff's quality, reputation, and goodwill and have never been abandoned.

8. Defendants' sale, distribution, and advertising of the Infringing Products are highly likely to cause consumers to believe that Defendants are offering genuine versions of Plaintiff's Products when in fact they are not. To illustrate, below are several examples which vividly show that the Infringing Products themselves and the manner in which they are marketed is designed to confuse and mislead consumers into believing that they are purchasing Plaintiff's Product or that the Infringing Product is otherwise approved by or sourced from Plaintiff:



| PLAINTIFF'S PRODUCT | INFRINGING LISTING OF DEFENDANT Fillapex |
|---|---|
|  |  |
| PLAINTIFF'S PRODUCT | INFRINGING LISTING OF DEFENDANT bettysmorning |
|  |     |

Additional photograph comparisons of Plaintiff's Products and the Infringing Products appear in **Exhibit 1** attached to the Complaint.  It is no surprise that all of the Defendants are infringing on the Plaintiff's Marks and/or Works and/or Trade Dress because the Plaintiff's Product is the #1 Selling in the Category of Blended Vitamin & Mineral Supplements:

## Product details

**Package Dimensions : ** 3.82 x 1.89 x 1.85 inches; 0.07 ounces
**Item model number : ** Black Seed Oil
**Date First Available : ** October 15, 2022
**Manufacturer : ** Clean Nutraceuticals
**ASIN : ** B0BG94RWYN
**Best Sellers Rank:** #65 in Health & Household (See Top 100 in Health & Household)
   #1 in Blended Vitamin & Mineral Supplements
**Customer Reviews:**
4.4 ★★★★☆ ⌄     13,347 ratings

9. Since some of the Infringing Products may be poorly designed and manufactured products, there is a risk of injury to and disappointment from the confused customers.

10.  The Infringing Products threaten to destroy the reputation of high quality that Plaintiff's Products have earned.

11.  On information and belief, Defendants' sale of Infringing Products gives rise to a plausible expectation that discovery will reveal that Defendants' actions all arise from the same transaction, occurrence, or series of transactions.  Specifically, on information and belief, Defendants are actively participating in a conspiracy to distribute and sell Infringing Products. For example, Defendants, on information and belief, are working together to manufacture, arrange the manufacture of and/or sell and otherwise distribute the Infringing Products, using identical or the substantially similar infringing photographs and trade dress.  Moreover, the Infringing Products share similar characteristics including, for example the arrangement of

- 8-

elements, the text, formatting, the selection of colors and backgrounds and patterns used on the labels to sell the Infringing Products.

12.  Defendants' actions have resulted in actual confusion in the marketplace between Defendants' Infringing Products and the genuine version of Plaintiff's Products. Some purchasers of Defendants' Infringing Products have written and/or complained about the quality of the Infringing Products believing the same to be a genuine version of Plaintiff's Products, for example:

**Comment:**
Good evening. I purchased Cleanutraceuticals multimineral Sea Moss, Black Seed oil, Ashwangandha, & Burdock Root from Walmart.com. I want to know if this is your authentic product. I took pictures of the bottle to attach to this message, however I don't see an option to attach pictures. When you respond to my email, I will be able to upload the pics. There is an ingredient of black pepper on this label that I don't see on your site and the frontof the label states how many mg of each herb is in it and I don't see that on your label. The label is not properly aligned on the bottle. The sealed fir your protection seems off. The cap doesn't lock securely onto the bottle. Please advise.

---

**Comment:**
I ordered the sea moss blackseed oil ashwagandha and burdock root from Walmart but when I received my order it doesnt have the name of the company on it.

So i wanted to know if they are a knock-off or scam or whats going on.

Can you please help?

**Comment:**
I placed an order on Walmart.com for 2 bottles, 60count.of the Clean Nutraceuticals Sea Moss 3000mg BLack Seed Oil 2000mg Ashwagandha 1000mg Tumeric 1000mg Bladderwack 1000mg supplement on April 1st and recieved them but there is no identification that they are made and distrubuted by you on the bottle. I am not sure what is actually in the capsule and I feel this is false advertisement. . The Seller name is MyLove and here is there # (+86) 18664937640 Here is my Order# 2000117-35721669. I would appreciate any help you could provide. Thanks!

**Comment:**
I purchased a few bottles of your sea moss, black seed oil, etc... bottle of supplements from Walmart. I didn't realize it was from a reseller. It took well over a month for me to receive it, and there is a claim under reviews that it was fake. Is there a way to determine if the product is real? Thanks.

**Comment:**
Just received the all in 1 supplement probably my 10th bottle but ordered from temu. Pills are different color label and bottle are different and the company name isn't on the label. I know people can print labels and other stuff but I'm scared to take this because it came from a house at ABOK-TK 1233 Flintlock Road Diamond Bar, California 91765. Arrest this fake person ID I was you guys. The pills are a charcoal Grey color or more salt and pepper look

**Comment:**
I purchased two bottles of your supplements from Walmart.com. I also purchased from Amazon. The bottles are different that I received from Walmart. Com and don't have the Clean Nutra logo on the packaging. Could these be Counterfeit or do you sale supplements that don't carry your label on the bottles?

13. By copying one or more of the Plaintiff's Marks, Works and/or Trade Dress, Defendants are all engaging in unfair competition designed to confuse consumers into believing they are selling Plaintiff's top ranked product.

14.  Plaintiff therefore brings this action for federal copyright infringement pursuant to 17 U.S.C. § 501(a), *et seq* and Federal Unfair Competition, 15 U.S.C. § 1125(a), state common law Unfair Competition and common law trademark infringement.

## JURISDICTION AND VENUE

15.  This is an action for federal copyright infringement; federal unfair competition; common law unfair competition, and common law trademark infringement. Accordingly, this Court has subject matter jurisdiction over this action pursuant to 15 U.S.C. §§ 1114, 1116, 1125(a), and 1125(d); 15 U.S.C. § 1121, 28 U.S.C. §§ 1331, and The All Writs Act, 28 U.S.C. § 1651(a). This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over Plaintiff's state law claims because those claims are so related to the federal claims that they form part of the same case or controversy.

16.  This Court may exercise personal jurisdiction over a non-resident of the State in which the Court sits to the extent authorized by the state's laws. Fed. R. Civ. P. 4(e). Pennsylvania authorizes personal jurisdiction over each Defendant pursuant to 42 Pa. Cons. Stat. § 5322 (a) which provides in pertinent part: "A tribunal of this Commonwealth may exercise personal jurisdiction over a person ... as to a cause of action or other matter arising from such person: (1) Transacting any business in this Commonwealth.  Without excluding other acts which may constitute transacting business for the purpose of this paragraph: (ii) The doing of a single act in this Commonwealth for the purpose of thereby realizing pecuniary benefit ... (3) Causing harm or tortious injury by an act or omission in this Commonwealth. (4) Causing harm or tortious injury by an act or omission outside this Commonwealth ... (10) Committing any violation within the jurisdiction of the Commonwealth of any statute, home rule charter, local ordinance or resolution, or rule or regulation promulgated thereunder by any government unit or

of any order of court or other government unit." In the alternative, Federal Rule of Civil Procedure 4(k) confers personal jurisdiction over the Defendants because, upon information and belief, Defendants regularly conduct, transact and/or solicit business in Pennsylvania and in this judicial district, and/or derive substantial revenue from their business transactions in Pennsylvania and in this judicial district and/or otherwise avail themselves of the privileges and protections of the laws of the Commonwealth of Pennsylvania such that this Court's assertion of jurisdiction over Defendants does not offend traditional notions of fair play and due process, and/or Defendants' illegal counterfeiting and infringing actions caused injury to Plaintiff in Pennsylvania and in this judicial district such that Defendants should reasonably expect such actions to have consequences in Pennsylvania and in this judicial district, for example:

      a. Upon information and belief, at all times relevant hereto, Defendants were and/or are systematically directing and/or targeting their business activities at consumers in the United States, including Pennsylvania, through on-line platforms with Merchant Storefronts (as defined *infra*), via on-line marketplace websites, like Amazon.com, eBay.com, Temu.com, Wish.com, Walmart.com, Alibaba.com and AliExpress.com, under the Seller IDs, as well as any and all as yet undiscovered accounts with Merchant Storefronts held by or associated with Defendants, their respective officers, employees, agents, servants and all persons in active concert or participation with any of them ("User Accounts"), through which consumers in the United States, including Pennsylvania, can view the one or more of Defendants' Merchant Storefronts that each Defendant operates, uses to communicate with Defendants regarding their listings for Infringing Products and to place orders for, receive invoices for and purchase Infringing Products for delivery in

the U.S., including Pennsylvania, as a means for establishing regular business with the U.S., including Pennsylvania.

b. Upon information and belief, certain Defendants are sophisticated sellers, each operating one or more commercial businesses using their respective User Accounts through which Defendants, their respective officers, employees, agents, servants and all persons in active concert of participation with any of them, operate storefronts to manufacture, import, export, advertise, market, promote, distribute, offer for sale and/or otherwise deal in products, including the Infringing Products, which are held by or associated with Defendants, their respective officers, employees, agents, servants and all persons in active concert or participation with any of them ("Merchant Storefront(s)") in wholesale quantities at significantly below-market prices to consumers worldwide, including to those in the U.S., and specifically Pennsylvania.

c. Upon information and belief, Defendants' Merchant Storefronts reflect multiple sales to consumers all over the world, including repeat sales to consumers in the U.S. and into this judicial district.

d. Upon information and belief, all Defendants accept payment in U.S. Dollars, collect and pay Pennsylvania sales tax, and offer shipping to the U.S., including to Pennsylvania.

e. Upon information and belief, at all times relevant, Defendants have transacted business with consumers located in the U.S., including Pennsylvania, for the sale and shipment Infringing Products.

f. Upon information and belief, Defendants are employing and benefiting from substantially similar, paid advertising and marketing and advertising strategies in order to make their Merchant Storefronts selling illegal goods appear more relevant and attractive to search result software across an array of search words, including but not limited to "Sea Moss" and "Black Seed Oil." By their actions, Defendants are causing concurrent and indivisible harm to Plaintiff and the consuming public by (i) depriving Plaintiff of its right to fairly compete for space within the various on-line marketplace search results and reducing the visibility of the Plaintiff's Products on various on-line marketplaces and/or diluting and driving down the retail market price for the (ii) causing an overall degradation of the value of the goodwill associated with Plaintiff's works and goods; and (iii) increasing Plaintiff's overall cost to market its goods and educate consumers about its brand and products.

g. Upon information and belief, via one or more online chat rooms, and other communications methods, (1) Defendants monitor various lawsuits against counterfeiting and infringing, (2) Defendants consult with legal counsel to defend their illegal activities, and (3) Defendants have cooperated, communicated their plans with one another, shared information, and coordinated their efforts, all in order to create an illegal marketplace operating in parallel to the legitimate marketplace of Plaintiff's and the legally authorized resellers of Plaintiff's genuine goods.

h. Upon information and belief, Defendants are concurrently targeting their infringing activities toward consumers and causing harm in Allegheny County, Pennsylvania.

i. Upon information and belief, many Defendants likely reside and/or operate in and/or purchase the illegal goods from foreign jurisdictions with lax trademark and patent enforcement systems and are cooperating by creating an illegal stream of infringing goods.

j. Upon information and belief, Defendants are aware of Plaintiff's Products, and are aware that their illegal infringing actions alleged herein are likely to cause injury to Plaintiff in the United States, in Pennsylvania and in this judicial district specifically, as Plaintiff conducts substantial business in Pennsylvania.

k. Plaintiff is suffering irreparable and indivisible injury and suffered substantial damages as a result of Defendants' unauthorized and wrongful sale of counterfeit and infringing goods.

17. Venue is proper, *inter alia*, pursuant to 28 U.S.C. § 1391 and 28 U.S.C. §§ 1400(a) and (b) because, for example:

a. Upon information and belief, Defendants, conduct, transact, and/or solicit business in this judicial district.

b. Upon information and belief, Defendants or their agent(s) may be found in this district because personal jurisdiction is proper in this district.

c. Upon information and belief, this is a judicial district in which a substantial part of the events or omissions giving rise to the infringement claims occurred, or a substantial part of the property that is the subject of the action is situated.

d. Defendants not resident in the United States may be sued in this judicial district because personal jurisdiction is proper in this district.

## THE PLAINTIFF

18. ALLSEASON ENTERPRISES, LLC, is a New Mexico Limited Liability Company, having its principal place and doing business at 7580 LAS VEGAS BLVD SO STE 115, LAS VEGAS, NV, 89123 ("AE").

19. Plaintiff is the sole authorized distributor of its products and sells them online on Amazon and elsewhere. Defendants, through the sale and offer to sell Infringing Products, are directly and unfairly competing with Plaintiff's economic interest in the Commonwealth of Pennsylvania and causing Plaintiff harm within this jurisdiction.

20. Like many other brand owners, Plaintiff suffers ongoing daily and sustained violations of its rights at the hands of infringers, such as Defendants herein, who wrongfully reproduce Plaintiff's Products for the twin purposes of (i) duping and confusing the consuming public and (ii) earning substantial profits from the sale of their Infringing Products. The natural and intended byproduct of Defendants' actions is the erosion and destruction of the goodwill associated with Plaintiff's Products and the destruction of the legitimate market sector in which Plaintiff operates.

21. The recent explosion of counterfeiting and infringement over the Internet, including through online marketplace platforms, has created an environment that requires brand owners, such as Plaintiff, to expend significant time and money across a wide spectrum of efforts in order to protect both consumers and Plaintiff from the ill effects of confusion and the erosion of the goodwill associated with Plaintiff's brand and products.

## THE DEFENDANTS

22. The Defendants are individuals and/or business entities of unknown makeup, each of whom, upon information and belief, either reside or operate in foreign jurisdictions, or (though not foreign) as identified US sellers[3], redistribute products from the same or similar sources in those locations. Defendants have the capacity to be sued pursuant to Federal Rule of Civil Procedure 17(b). Defendants target their business activities toward consumers throughout the United States, including within this district, and conduct pervasive business through the operation of, at least, one fully interactive commercial Internet based e-commerce store via, at least, the Internet based online marketplaces, Amazon.com, eBay.com, Temu.com, Wish.com, Walmart.com, and AliExpress.com under the Seller IDs.

23. Most of the Defendants use aliases in conjunction with the operation of their businesses, including but not limited to those as set forth in **Schedule "A"** hereto.

---

[3]    Prior to filing this lawsuit, Plaintiffs viewed a public seller profile that is published by certain Defendant's storefronts that purports to identify the name and address of the Defendant. Solely based upon their representation on their storefronts, the following defendants have identified themselves as US-based and are not at this time alleged to be foreign sellers: Routes Enterprises, A4Effort, BAZAN LLC, DATH store, FanFentac Ltd., FB Handyman, GIANTBEAR GLOBAL, Gibson's Essentials, GP-Shoppers, JhnPakistan, LifexStore, LLC Divine Healing Sea Moss, Mazamart, MDA LOGISTICS INC, Naqi Prime inc, Nodomo, Nutri plus, Orber Shop, Shop with Brookes, TY FAB WORKS LLC, UGIRL-US, VOLTZAP, ank_store, Avidmarket, beauty-store_8, bsm950, Discount Direct Deals 100, Fillapex, freeafterever2013, FURTUE, GlobalTech Treasures Inc, guliyuk-60, HANDSOME/DEAL, hkkule1015, imindsets1030, janakleesdeals, Jessica's Botanical Boutique, kattrodrigue5, Live Love Shop Inspire, mcc-creations-llc, MINGJIE1, minhabeautystore, Naturbodi, onedudeshop, pineappleninja, QC THE MARKET, Qwick Stop, RetailTherapy708, romakha_93, S&J Daily Discounts, sharppointedthings, shelliyode_0, supermarket-k, The.Urban.Essentials, thevitaminshop23, three-3brothers-inc, trendystickers, uclickishipfl, WestCoastGoodz, wingsolutions, Worldmart Wholesale, and zaranew.

24.  Defendants are the past and present controlling forces behind the sale of products bearing and/or using infringements of the Plaintiff's Marks, Works, and/or a substantially similar copy of Plaintiff's Works, and/or Trade Dress as described herein using at least the Seller IDs.

25.  Upon information and belief, Defendants directly engage in using infringements of the Plaintiff's Marks, Works and/or Trade Dress, to consumers within the United States and this district through several fully interactive, commercial Internet websites and Internet based e-commerce stores operating under, at least, the storefronts, the Seller IDs, and any additional domain names, websites and corresponding website URLs or seller identifications and store URL aliases not yet known to Plaintiff.  Defendants have purposefully directed some portion of their illegal activities towards consumers in the Commonwealth of Pennsylvania through the advertisement, offer to sell, sale, and/or shipment of Infringing Products into the Commonwealth.

26.  Defendants have registered, established or purchased, and maintained the on-line marketplace website storefronts and Seller IDs.  Upon information and belief, Defendants have engaged in fraudulent conduct with respect to the registration of the storefronts and Seller IDs by providing false and/or misleading information to the Internet based e-commerce platforms where they offer for sale and/or sell, during the registration or maintenance process related to their respective Seller ID.  Upon information and belief, Defendants have anonymously registered and maintained some of the Seller IDs for the sole purpose of engaging in illegal infringing activities.

27.  Upon information and belief, Defendants will continue to register or acquire new seller identification aliases for the purpose of selling and offering for sale goods bearing and/or using confusingly similar imitations of Plaintiff's Marks, Works and/or Trade Dress, in order to

deceive and defraud consumers in their sales of Knock-Off and Infringing substandard and possibly dangerous goods unless preliminarily and permanently enjoined.

28.  Defendants' Internet-based businesses amount to nothing more than illegal operations established and operated in order to infringe the intellectual property rights of Plaintiff.

29.  Defendants' business names, i.e., the Seller IDs, associated payment accounts, and any other alias seller identification names used in connection with the sale of infringing goods bearing and/or using Plaintiff's Works and/or Trade Dress are essential components of Defendants' online activities and are the means by which Defendants further their infringement scheme and cause harm to Plaintiff.[4]  Moreover, Defendants are using Plaintiff's Marks and/or Works and/or Trade Dress to drive Internet consumer traffic to their e-commerce stores operating under the Seller IDs, thereby creating and increasing the value of the Seller IDs and decreasing the size and value of Plaintiff's legitimate consumer marketplace at Plaintiff's expense.

---

[4]  Consequently, Plaintiff seeks to discover this information from the relevant Third Party Service Provider(s) and Financial Institution(s) in order to learn who is behind these infringing activities and the location and extent of their assets obtained through their infringing activities. *See*  15 U.S.C. § 45f; Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 P.S. §§ 201-1, *et seq.*(Requiring Third Party Service Providers to collect and keep records pertaining to identities and locations of high volume sellers, as well as financial documents).

## COMMON FACTUAL ALLEGATIONS

**Plaintiff's Products**

30. Plaintiff's Products have unique packaging, labels, and designs that are inherently distinct features, including, color, size, and shape selections, that all function as a source identifier for the Plaintiff's Product. The Plaintiff's Works have acquired secondary meaning and are valid and subsisting Trade Dress. The secondary meaning was acquired before the Defendants' use of the Plaintiff's Works and/or Trade Dress. The combined unique features, ornamental, and decorative features of Plaintiff's Product packaging, Plaintiff's Marks, and Plaintiff's Works comprise Plaintiff's Trade Dress[5], including the distinct photographs, the design, the instructions, the packaging, and the unique presentation of the product, all comprise Plaintiff's valuable intellectual property ("IP") and all have become distinct in consumer's minds such that consumers associate all of this IP with Plaintiff's Products.

31. Plaintiff displays and promotes its products using Plaintiff's copyright registrations in interstate commerce to identify and distinguish Plaintiff's goods.

32. Plaintiff's Marks, Works and Trade Dress have been used by the Plaintiff prior in time to Defendants' use of the work. The Plaintiff's Marks, Works and Trade Dress have never been assigned or licensed to any of the Defendants in this matter.

---

[5] Plaintiff's Trade Dress comprises the organization, selection of the text, arrangement of the elements of the creative artwork and colors for the label, the differently colored spheres containing abbreviations for various vitamins, minerals, and supplements, the black tree shaped background and the distinctly proportioned text. The Trade Dress is distinct and immediately conveys the source of the goods to the consumer.

33. Plaintiff's Marks, Works and Trade Dress are symbols of Plaintiff's quality, reputation, and goodwill and have never been abandoned.

34. Genuine goods bearing the Plaintiff's Marks, Works and/or using the Plaintiff's Trade Dress are widely legitimately advertised and promoted by Plaintiff and unrelated third parties via the Internet. Over the past several years, visibility on the Internet, particularly via Internet search engines such as Google, Yahoo!, and Bing, has become increasing important to Plaintiff's overall marketing. Thus, Plaintiff expends significant monetary resources on Internet marketing, including search engine optimization ("SEO") strategies. Those strategies allow Plaintiff and their authorized retailers to fairly and legitimately educate consumers about the value associated with Plaintiff's brand and the goods sold thereunder. Similarly, Defendants' individual seller's stores are indexed on search engines and compete directly with Plaintiff for space in the search results.

**Defendants' Wrongful and Infringing Conduct**

35. Upon information and belief, Defendants are, through at least the Internet based e-commerce stores operating under the Seller IDs, promoting, selling, offering for sale and distributing goods bearing and/or using confusingly similar imitations of the Plaintiff's Marks, Works, or substantially similar copies of Plaintiff's Works, and/or Trade Dress while marketing Infringing Products in a willful attempt to pass off their knock-off products as genuine versions of Plaintiff's Products.

36. E-commerce sales, including through e-commerce stores like those of Defendants, have resulted in a sharp increase in the shipment of unauthorized products into the United States.

*Ference Dec*[6]*.,* Exhibit 1*,* Excerpts from Fiscal Year 2021 U.S. Customs and Border Protection ("CBP") Intellectual Property Seizure Statistics Report.  Over 89% of all CBP intellectual property seizures were smaller international mail and express shipments (as opposed to large shipping containers).  *Id.*  More than half (51%) of CBP seizures originated from mainland China and Hong Kong.  *Id.*  Counterfeit and pirated products account for billions in economic losses, resulting in tens of thousands of lost jobs for legitimate businesses and broader economic losses, including lost tax revenue.

37.  Third party service providers like those used by Defendants do not adequately subject new sellers to verification and confirmation of their identities, allowing counterfeiters to "routinely use false or inaccurate names and addresses when registering with these e-commerce platforms."  *Ference Dec.,* Exhibit 2, Daniel C.K. Chow, Alibaba, Amazon, and Counterfeiting in the Age of the Internet, 40 NW. J. INT'L L. & BUS. 157, 186 (2020); see also, report on "Combating Trafficking in Counterfeit and Pirated Goods" prepared by the U.S. Department of Homeland Security's Office of Strategy, Policy, and Plans (Jan. 24, 2020), attached as *Ference Dec.,* Exhibit 3, and finding that on "at least some e-commerce platforms, little identifying information is necessary for a counterfeiter to begin selling" and recommending that "[s]ignificantly enhanced vetting of third-party sellers" is necessary.  Counterfeiters hedge against the risk of being caught and having their websites taken down from an e-commerce platform by preemptively establishing multiple virtual store-fronts. *Ference Dec.,* Exhibit 3**,** at p. 22.  Since platforms generally do not require a seller on a third-party marketplace to identify the underlying business entity, counterfeiters can have many different profiles that can appear

---

[6]   Referring to Declaration of Stanley D. Ference III in Support of Temporary Restraining Order, filed herewith.

unrelated even though they are commonly owned and operated. *Ference Dec.,* Exhibit 3, at p. 39.

Further, "E-commerce platforms create bureaucratic or technical hurdles in helping brand owners

to locate or identify sources of counterfeits and counterfeiters*." Ference Dec.,* Exhibit 2, at 186-

187.

38.  Upon information and belief, Defendants did not obtain an opinion from United

States Counsel about the legality of offering for sale each of the Infringing Products.

39.  Upon information and belief, Defendants' Infringing Products are of a quality

substantially and materially different than that of Plaintiff's genuine goods.  Defendants, upon

information and belief, are actively using, promoting and otherwise advertising, distributing,

selling, and/or offering for sale substantial quantities of their Infringing Products with the

knowledge and intent that such goods will be mistaken for the genuine high-quality goods

offered for sale by Plaintiff despite Defendants' knowledge that they are without authority to use

the Plaintiff's Marks, Works and/or Trade Dress.  The net effect of Defendants' actions will

cause confusion of consumers, at the time of initial interest, sale, and in the post-sale setting,

who will believe Defendants' Infringing Products are genuine goods originating from, associated

with, and approved by Plaintiff.

40.  Defendants advertise their Infringing Products for sale to the consuming public via

Internet based e-commerce stores on, at least, one Internet marketplace using at least the Seller

IDs.  In so advertising these goods, Defendants improperly and unlawfully infringed upon the

Plaintiff's Marks, Works, or substantially similar copies of Works and/or Trade Dress,  without

Plaintiff's permission.

41.  As part of their overall infringement scheme, Defendants are, upon information and

belief, concurrently employing and benefitting from substantially similar advertising and

marketing strategies based, in large measure, upon an illegal use of infringements of the Plaintiff's Works. Specifically, Defendants are using infringements of Plaintiff's rights in order to make their e-commerce stores selling illegal goods appear more relevant and attractive to consumers online. By their actions, Defendants are contributing to the creation and maintenance of an illegal marketplace operating in parallel to the legitimate marketplace for Plaintiff's genuine goods. Defendants are causing, individual, concurrent and indivisible harm to Plaintiff and the consuming public by (i) depriving Plaintiff and other third parties of their right to fairly compete for space within search engine results and reducing the visibility of Plaintiff's genuine goods on the World Wide Web, (ii) causing an overall degradation of the value of the goodwill associated with the Plaintiff's rights, and (iii) increasing Plaintiff's overall cost to market its goods and educate consumers about its brand via the Internet.

42. Upon information and belief, Defendants are concurrently targeting their infringing activities toward consumers and causing harm within this district and elsewhere throughout the United States. As a result, Defendants are harming Plaintiff and the consuming public for Defendants' own benefit.

43. Plaintiff confirmed that Defendants were and/or are still currently offering for sale and/or selling Infringing Products for sale to the consuming public via Internet based e-commerce stores on at least one Internet marketplace using at least the Seller IDs and that Defendants provide shipping and/or have actually shipped Infringing Products to customers located within this judicial district.

44. There is no question that the Infringing Products themselves and the manner in which they are marketed is designed to confuse and mislead consumers into believing that they are purchasing Plaintiff's Product or that the Infringing Products are otherwise approved by or

sourced from Plaintiff, thereby trading on the goodwill and reputation of Plaintiff by engaging in the unauthorized use of Plaintiff's Marks, Works, or substantially similar copies of Plaintiff's Works, and/or Trade Dress.

45.  At all times relevant hereto, Defendants in this action had full knowledge of Plaintiff's ownership of the Plaintiff's Marks, Works and/or Trade Dress, including its exclusive right to use and license such intellectual property and the goodwill associated therewith.

46.  Defendants' use of Plaintiff's Marks, Works, and/or substantially similar copies of Plaintiff's Works, and/or Trade Dress, including the promotion and advertisement, reproduction, distribution, sale, and offering for sale of their Infringing Products, is without Plaintiff's consent or authorization.

47.  Defendants are engaging in the above-described illegal infringing activities knowingly and intentionally or with reckless disregard or willful blindness to Plaintiff's rights for the purpose of trading on Plaintiff's goodwill and reputation.  If Defendants' intentional infringing activities are not preliminarily and permanently enjoined by this Court, Plaintiff and the consuming public will continue to be harmed.

48.  Defendants above identified infringing activities are likely to cause confusion, deception, and mistake in the minds of consumers before, during, and after the time of purchase. Moreover, Defendants' wrongful conduct is likely to create a false impression and deceive customers, the public, and the trade into believing there is a connection or association between Plaintiff's genuine goods and Defendants' Infringing Products, which there is not.

49.  Defendants' payment and financial accounts are being used by Defendants to accept, receive, and deposit profits from Defendants' infringing and unfairly competitive activities

connected to their Seller IDs and any other alias e-commerce stores, photo albums, seller identification names, domain names, or websites being used and/or controlled by them.

50.  Further, upon information and belief, Defendants are likely to transfer or secret their assets to avoid payment of any monetary judgment awarded to Plaintiff.

51.  Plaintiff has no adequate remedy at law.

52.  Plaintiff is suffering irreparable injury and has suffered substantial damages as a result of Defendants' unauthorized and wrongful use of Plaintiff's Marks, Works, and/or substantially similar copies of Plaintiff's Works, and/or Trade Dress.  If Defendants' infringing activities are not preliminarily and permanently enjoined by this Court, Plaintiff and the consuming public will continue to be harmed.

53.  The harm and damages sustained by Plaintiff have been directly and proximately caused by Defendants' wrongful reproduction, use, advertisement, promotion, offers to sell, and sale of their Infringing Products.

**The Scope of Defendants' Activities**

54.  Upon information and belief, each Defendant operates more than one merchant storefront.

55.  Upon information and belief, each Defendant operates merchant storefronts across multiple e-commerce marketplaces.

56.  Upon information and belief, each Defendant has sold more than 150,000 units of the Infringing Product.

57.  Upon information and belief, each Defendant's profits from the sale of the Infringing Products totals more than $100,000.

58. Upon information and belief, each Defendant's profits from the sale of the Infringing Products totals more than $300,000.

59. Upon information and belief, each Defendant's profits from the sale of the Infringing Products totals more than $2,000,000.

**COUNT I – FEDERAL COPYRIGHT INFRINGEMENT (17 U.S.C. § 501(a)**

**Plaintiff vs. All Defendants**

60. All the above paragraphs are incorporated herein by reference.

61. Plaintiff is the exclusive owner and licensee of Plaintiff's Works.

62. Defendants had actual notice of Plaintiff's exclusive rights in and to the Plaintiff's Works.

63. Defendants did not attempt and therefore inherently failed to obtain Plaintiff's consent or authorization to use, manufacture, reproduce, copy, display, prepare derivative works of, distribute, sell, transfer, rent, perform and/or market Plaintiff's Works.

64. Defendants' unlawful actions have caused and are continuing to cause unquantifiable damages to Plaintiff and are unjustly enriching Defendants with profits at Plaintiff's expense.

65. Without permission, Defendants knowingly and intentionally reproduced, copied, and displayed the Plaintiff's Works by manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale and/or selling products that utilize features that are, at a minimum, substantially similar to the Plaintiff's Works.

66. Defendants' unlawful and willful action as alleged herein constitute infringement of the Plaintiff's Works, including Plaintiff's exclusive rights to reproduce, distribute and/or sell such Work in violation of 17 U.S.C. § 501(a).

67. Defendants' knowing and intentional copyright infringement, as alleged herein, has caused substantial and irreparable harm to Plaintiff in an amount as yet unknown but to be proven at trial, for which Plaintiff has no adequate remedy at law, and unless enjoined, Defendants will continue to cause substantial and irreparable harm to Plaintiff. Plaintiff is entitled to injunctive relief, Plaintiff's actual damages and Defendants' profits in an amount to be proven at trial, enhanced discretionary damages for willful copyright infringement, and reasonable attorneys' fees and costs.

### COUNT II - FALSE DESIGNATION OF ORIGIN, PASSING OFF & UNFAIR COMPETITION PURSUANT TO § 43(a) OF THE LANHAM ACT (15 U.S.C. § 1125(a))
#### Plaintiff vs. All Defendants

68. Plaintiff hereby adopts and re-allege the allegations set forth in the preceding paragraphs as if set forth herein.

69. The Defendants have made and sold in interstate commerce Infringing Goods that embody Plaintiff's Trade Dress, including, using Plaintiff's Works and/or Trade Dress as a means to attract, divert and take sales from Plaintiff, thus unfairly competing.

70. As result of the Defendants' conduct as set forth herein, consumers could be confused and induced to purchase the Defendants' Infringing Goods, mistakenly believing them to be Plaintiff's Products, thus depriving Plaintiff of the profits for sale.

71. Defendants' Infringing Goods using Plaintiff's Works and/or Trade Dress, offered for sale, and sold into Pennsylvania are virtually identical in appearance to Plaintiff's respective, genuine goods. However, Defendants' Infringing Goods are different and likely inferior in

quality. Accordingly, Defendants' activities are likely to cause confusion in the trade and among the general public as to at least the origin or sponsorship of their Infringing Goods.

72. Defendants, upon information and belief, have used in connection with their advertisement, offers for sale, and sale of the Infringing Goods, false designations of origin and false descriptions and representations, including words or other symbols and trade dress which tend to falsely describe or represent such goods and have caused such goods to enter into commerce with full knowledge of the falsity of such designations of origin and such descriptions and representations, all to Plaintiff's detriment.

73. Defendants have authorized infringing uses of Plaintiff's Trade Dress in Defendants' advertisement and promotion of their Infringing and infringing branded goods. Defendants have also misrepresented to members of the consuming public that the Infringing Goods being advertised and sold by them are genuine, non-infringing goods.

74. Defendants knowingly and willfully used in commerce products and/or packaging designs that are identical or confusingly similar to, and constitute reproductions of Plaintiff's Works and Trade Dress and affixed, applied and used false designations of origin and false misleading descriptions and representations on or in connection with the manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale and/or sale of Infringing Products with the intent to cause confusion, to cause mistake and to deceive the purchasing public into believing, in error, that Defendants' substandard Infringing Goods are Plaintiff's or related products, and/or that Defendants' Infringing Goods are authorized, sponsored, approved, endorsed or licensed by Plaintiff and/or that Defendants are affiliated, connected or associated with Plaintiff, thereby creating a likelihood of confusion by consumers as to the source of such Infringing Goods, and allowing Defendants to capitalize on

the goodwill associated with, and the consumer recognition of, the Plaintiff's Trade Dress and products, to Defendants' substantial profit in blatant disregard of Plaintiff's rights.

75.  Additionally, Defendants are using infringements of Plaintiff's Trade Dress in order to unfairly compete with Plaintiff and others for space within search engine organic results, thereby jointly depriving Plaintiff of a valuable marketing and educational tool which would otherwise be available to Plaintiff and reducing the visibility of Plaintiff's genuine goods on the World Wide Web.

76.  Defendants' above-described actions are in violation of Section 43(a) of the Lanham Act, 15 U.S.C. §1125(a).

77.  Plaintiff has no adequate remedy at law, and has sustained indivisible injury and damage caused by Defendants' concurrent conduct. Absent an entry of an injunction by this Court, Defendants will continue to wrongfully reap profits and Plaintiff will continue to suffer irreparable injury to its respective goodwill and business reputations, as well as monetary damages.

78.  Based on Defendants' wrongful conduct, Plaintiff is entitled to injunctive relief as well as monetary damages and other remedies as provided by the Lanham Act, including damages that Plaintiff has sustained and will sustain as a result of Defendants' illegal and infringing actions as alleged herein, and all gains, profits and advantages obtained by Defendants as a result thereof, enhanced discretionary damages and reasonable attorneys' fees and costs.

## COUNT III - TRADEMARK COUNTERFEITING AND INFRINGEMENT PURSUANT TO § 32 OF THE LANHAM ACT (15 U.S.C. § 1114)
### Plaintiff vs. Defendant Nos. 1, 37, 39, 43, 54, 74, 82, 86, 108, 113, 115, and 118[7]

79. Plaintiff hereby adopts and re-allege the allegations set forth in the preceding paragraphs as if set forth herein.

80. This is an action for trademark counterfeiting and infringement against Defendants based on their use of counterfeit and confusingly similar imitations of Plaintiff's Marks in commerce in connection with the promotion, advertisement, distribution, offering for sale, and sale of the Counterfeit Goods.

81.  Specifically, Defendants are promoting and otherwise advertising, selling, offering for sale, and distributing products bearing and/or using counterfeits and/or infringements of one or more of Plaintiff's Marks. Defendants are continuously infringing and inducing others to infringe Plaintiff's Marks by using them to advertise, promote, offer to sell, and/or sell goods bearing and/or using Plaintiff's Marks.

82. Defendants' concurrent counterfeiting and infringing activities are likely to cause and actually are causing confusion, mistake and deception among members of the trade and the general consuming public as to the origin and quality of Defendants' Counterfeit Goods.

83. Defendants' unlawful actions have caused and are continuing to cause unquantifiable damages to Plaintiff and are unjustly enriching Defendants with profits at Plaintiff's expense.

---

[7]    The following Defendants are counterfeiting and infringing on one or more of the Plaintiff's Registered Marks: Routes Enterprises, bkabeda, counmo, Discounted_market, guliyuk-60, min561870, np-shua3953, POW-SALES, uclickishipfl, WestCoastGoodz, Worldmart Wholesale, and xuetielonglonglong.

84. Defendants' above-described illegal actions constitute counterfeiting and infringement of Plaintiff's Marks in violation of Plaintiff's rights under § 32 of the Lanham Act, 15 U.S.C. § 1114.

85. Plaintiff has suffered and will continue to suffer irreparable injury and damages due to Defendants' above-described activities if Defendants are not preliminarily and permanently enjoined. Additionally, Defendants will continue to wrongfully profit from their illegal activities.

86. Based on Defendants' actions as alleged herein, Plaintiff is entitled to injunctive relief, damages for the irreparable harm that Plaintiff has sustained, and will sustain, as a result of Defendants' unlawful and infringing actions, as alleged herein, and all gains, profits and advantages obtained by Defendants as a result thereof, enhanced discretionary damages, treble damages and/or statutory damages of $2,000,000 per counterfeit mark per type of goods sold, offered for sale or distributed and reasonable attorneys' fees and costs.

## COUNT IV - COMMON LAW UNFAIR COMPETITION
### Plaintiff vs. All Defendants

87. Plaintiff hereby adopts and re-allege the allegations set forth in the preceding paragraphs as if set forth herein.

88. This is an action against Defendants based on their promotion, advertisement, distribution, sale, and/or offering for sale of goods bearing and/or using marks that are virtually identical, both visually and phonetically, to Plaintiff's Marks and Trade Dress in violation of Pennsylvania's common law of unfair competition.

89. Specifically, Defendants are promoting and otherwise advertising, selling, offering for sale, and distributing goods bearing and/or using infringements of Plaintiff's Marks and Trade Dress. Defendants are also using infringements of Plaintiff's Marks and Trade Dress to

unfairly compete on online marketplaces with Plaintiff and others for space in marketplace search results across an array of search terms, including but not limited to Plaintiff's Works and/or Trade Dress.

90. Defendants' infringing activities are likely to cause and actually are causing confusion, mistake, and deception among members of the trade and the general consuming public as to the origin and quality of Defendants' products by their use of Plaintiff's Marks and Trade Dress.

91. Plaintiff has no adequate remedy at law and are suffering irreparable injury and damages as a result of Defendants' actions.

92. As a result of Defendants' actions alleged herein, Plaintiff is entitled to injunctive relief, an order granting Plaintiff's damages and Defendants' profits stemming from their infringing activities, and exemplary or punitive damages for Defendants' intentional misconduct.

## COUNT V - COMMON LAW TRADEMARK INFRINGEMENT
### Plaintiff vs. All Defendants

93. Plaintiff hereby adopts and re-alleges the allegations set forth in the preceding paragraphs as if set forth herein.

94. This is an action for common law trademark infringement against Defendants based on their promotion, advertisement, offering for sale, and sale of their Infringing Goods  Plaintiff is the owners of all common law rights in and to Plaintiff's Marks and/or Works and/or Trade Dress.

95. Specifically, Defendants, upon information and belief, are manufacturing, promoting and otherwise advertising, distributing, offering for sale, and selling goods bearing and/or using infringements of Plaintiff's Marks and/or Works and/or Trade Dress.

96. Defendants' infringing activities are likely to cause and actually are causing confusion, mistake and deception among members of the trade and the general consuming public as to the origin and quality of Defendants' Infringing Goods bearing and/or using Plaintiff's Marks and/or Works and/or Trade Dress.

97. Plaintiff has no adequate remedy at law and is suffering damages and irreparable injury as a result of Defendants' actions.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment on all Counts of this Complaint and an award of equitable relief and monetary relief against Defendants as follows:

a. Entry of temporary, preliminary and permanent injunctions pursuant to 15 U.S.C. § 1116, 17 U.S.C. § 502, and Federal Rule of Civil Procedure 65 enjoining Defendants, their agents, representatives, servants, employees, and all those acting in concert or participation therewith, from manufacturing or causing to be manufactured, importing, advertising or promoting, distributing, selling or offering to sell their Knock-Off Products; from infringing the Plaintiff's Marks and/or Works and/or Trade Dress; from using the Plaintiff's Marks and/or Works and/or Trade Dress in connection with the sale of any unauthorized goods; from using any work that may be calculated to falsely advertise the services or goods of Defendants as being sponsored by, authorized by, endorsed by, or in any way associated with Plaintiff; from using any reproduction, counterfeit, infringement, copy, or colorable imitation of the Plaintiff's Marks and/or Works and/or Trade Dress in connection with the publicity, promotion, sale, or advertising of any goods sold by Defendants; from engaging in search engine optimization strategies using colorable imitations of the Plaintiff's Marks and/or Works and/or Trade Dress; from further infringement, or from otherwise unfairly competing with Plaintiff.

b. Entry of an Order pursuant to 28 U.S.C. § 1651(a), The All Writs Act, and the Court's inherent authority that upon Plaintiff's request, any Internet marketplace website operators and/or administrators that are provided with notice of the injunction, including but not limited to the online marketplaces hosted by Amazon.com, eBay.com,Temu.com, Walmart.com, Wish.com, and AliExpress.com disable and/or cease facilitating access to the Seller IDs, and any other alias e-commerce stores being used and/or controlled by Defendants to engage in the marketing, promotion, offering for sale, and/or sale of goods bearing and/or using counterfeits and/or infringements of the Plaintiff's Marks and/or Works and/or Trade Dress.

c. Entry of an Order pursuant to 28 U.S.C. § 1651(a), The All Writs Act, and the Court's inherent authority that upon Plaintiff's request, any Internet marketplace website operators and/or administrators who are provided with notice of the injunction, including but not limited to online marketplaces hosted by Amazon.com, eBay.com, Temu.com,Walmart.com, Wish.com, and AliExpress.com permanently remove from multiple platforms, which include, *inter* alia, a Direct platform, Group platform, Seller Product Management platform, Vendor Product Management platform, and Brand Registry platform, any and all listings and associated images of goods bearing and/or using counterfeits and/or infringements of the Plaintiff's Marks and/or Works and/or Trade Dress, via the e-commerce stores operating under the Seller IDs on Schedule "A" hereto, and upon Plaintiff's request, any other listings and images of goods bearing and/or using counterfeits and/or infringements of the Plaintiff's Marks and/or Works and/or Trade Dress linked to the same seller or linked to any other alias seller identification name being used and/or controlled by Defendants to promote, offer for sale and/or sell goods bearing and/or using infringements of the Plaintiff's Marks and/or Works and/or Trade Dress.

d. Entry of an Order that, upon Plaintiff's request, any Internet marketplace website operators and/or administrators who are provided with notice of the injunction, including but not limited to online marketplaces hosted by Amazon.com, eBay.com, Temu.com, Walmart.com, Wish.com, and AliExpress.com immediately cease fulfillment of and sequester all goods of each Defendant or other Seller under a Seller ID bearing and/or using Plaintiff's Marks and/or Works and/or Trade Dress in its inventory, possession, custody, or control, and surrender those goods to Plaintiff.

e. Entry of an Order pursuant to 28 U.S.C. § 1651(a), the All Writs Act, that upon Plaintiff's request, any messaging service and Internet marketplace, social media, and image hosting website operators and/or administrators for the Seller IDs who are provided with notice of the injunction, including but not limited to operators and/or administrators of Amazon.com, eBay.com, Temu.com, Wish.com, Walmart.com, Allibaba.com and AliExpress.com, identify any e-mail address known to be associated with Defendants' respective Seller IDs.

f. Entry of an order pursuant to 28 U.S.C. § 1651(a), the All-Writs Act, and the Court's inherent authority, authorizing Plaintiff to serve the injunction on any e-mail service provider with a request that the service provider permanently suspend the e-mail address that used by Defendants in connection with Defendants' promotion, offering for sale, and/or sale of goods bearing and/or using infringements of the Plaintiff's Marks and/or Works and/or Trade Dress or otherwise unfairly competing with Plaintiff.

g. For an award of Plaintiff's actual damages and Defendants' profits, pursuant to 17 U.S.C. § 504(b), in an amount to be proven at trial for willful copyright infringement of the Plaintiff's Works under § 501(a).

h. In the alternative to Plaintiff's actual damages and Defendants' profits for copyright infringement of the Plaintiff's Works pursuant to 17 U.S.C. § 504(b), for statutory damages of $150,000.00 per infringement pursuant to 17 U.S.C. § 504(c) for willful copyright infringement, which Plaintiff may elect prior to rendering of final judgment, together with Plaintiff's costs and reasonable attorneys' fees and investigative fees associated with bringing this action.

i. all profits and damages resulting from certain Defendants' trademark counterfeiting and infringing and unfairly competitive activities and that the award to Plaintiff be trebled, as provided for under 15 U.S.C. §1117, or, at Plaintiff's election with respect to Count I, that Plaintiff be awarded statutory damages from certain Defendants in the amount of two million dollars ($2,000,000.00) per each counterfeit trademark used and product sold, as provided by 15 U.S.C. §1117(c)(2) of the Lanham Act.

j. Entry of an order requiring certain Defendants to account to and pay Plaintiff for all profits and damages resulting from Defendants' infringing and unfairly competitive activities, including those that violated Sections 5 and 12 of the Federal Trade Commission Act, and that the award to Plaintiff be trebled, plus costs, reasonable attorney's fees and investigative fees associated with bringing this action, all as provided for under 15 U.S.C. §1117.

k. Entry of an Order that, upon Plaintiff's request, any financial institutions, payment processors, banks, escrow services, money transmitters, or marketplace platforms, and their related companies and affiliates, identify and restrain all funds, up to and including the total amount of judgment, in all financial accounts and/or sub-accounts used in connection with the Seller IDs or other domain names, alias seller identification names, or e-commerce store names or store URLs used by Defendants presently or in the future, as well as any other related accounts of the same customer(s) and any other accounts which transfer funds into the same

financial institution account(s), to be surrendered to Plaintiff in partial satisfaction of the monetary judgment entered herein.

    l.  Entry of an award of pre-judgment interest on the judgment amount.

    m.  Entry of an order for any further relief as the Court may deem just and proper.

## **DEMAND FOR JURY TRIAL**

    Plaintiff respectfully demands a trial by jury on all claims.

                   Respectfully submitted,

Dated:  January 14, 2025

               /s/ Stanley D. Ference III
               Stanley D. Ference III
               Pa. ID No. 59899
               courts@ferencelaw.com

               Brian Samuel Malkin
               Pa. ID No. 70448
               bmalkin@ferencelaw.com

               FERENCE & ASSOCIATES LLC
               409 Broad Street
               Pittsburgh, Pennsylvania 15143
               (412) 741-8400 - Telephone
               (412) 741-9292 - Facsimile

               Attorneys for Plaintiff

Schedule "A"
**Defendants With Store Name and Seller ID**

| Defendant Number | Store/Seller Name | Seller ID |
|---|---|---|
| 1 | Routes Enterprises | 102545434 |
| 2 | Biocaro Pharmaceutical Co., Ltd | 1601058349852 |
| 3 | A4Effort | ASBGKGVP5SNTW |
| 4 | BAZAN LLC | A3NL9KM7C2UNCP |
| 5 | Dandan Tang | ANOAKHYPW4WDP |
| 6 | DATH store | A2D9VS6KA0DF7J |
| 7 | FanFentac Ltd. | A1B6STEO8H57OG |
| 8 | FB Handyman | AU5Y8QL1GE8Z9 |
| 9 | GIANTBEAR GLOBAL | A5CST4AX5F0C5 |
| 10 | Gibson's Essentials | APNQCJ0VOLLII |
| 11 | GP-Shoppers | AN38XYJTO1MOE |
| 12 | Home goods | A6ICTS3910TKP |
| 13 | JhnPakistan | A6HHCTN8HIGVL |
| 14 | JNJEA | A1AXC292ITC6HT |
| 15 | LifexStore | A3RS5H5KLHZPS3 |
| 16 | LLC Divine Healing Sea Moss | A3ERFXGBI7MLQ6 |
| 17 | Mazamart | AKBRKBMDLIFZN |
| 18 | MDA LOGISTICS INC | A2GXQJPS1APX1E |
| 19 | Naqi Prime inc | A12JXOLKGY5J30 |
| 20 | Naturerem | A3OZ1D35LH4AOW |
| 21 | Nodomo | A1ZL3BLMPPT6M2 |
| 22 | Nutri plus | A320X821B4WN2P |
| 23 | Orber Shop | AV79D96JQRI9T |
| 24 | PuffcoPal | A3S9T3B43E4242 |
| 25 | Shop with Brookes | A1KRTPWBEKMQSL |
| 26 | TY FAB WORKS LLC | A2BPFDO9DF0H2G |
| 27 | UGIRL-US | AI6E2WTTEO8H2 |
| 28 | VOLTZAP | A2RHD0WV5VKT0H |
| 29 | ZWQITDS | A1ZZVE469MFH1 |
| 30 | aliwakeel11 | 146239833821 |
| 31 | ank_store | 387011475483 |
| 32 | avidmarket | 355543724015 |
| 33 | Ayourmesell | 395595003925 |

| 34 | bcuzof-you-u | 356319236728 |
| 35 | beauty-store_8 | 364818408578 |
| 36 | bettysmorning | 196869510091 |
| 37 | bkabeda | 176622190898 |
| 38 | bsm950 | 266951458134 |
| 39 | counmo | 156569641730 |
| 40 | csgeneralsh | 226456600137 |
| 41 | davismd-089 | 405216569635 |
| 42 | Discount Direct Deals 100 | 166356051608 |
| 43 | Discounted_market | 305855720991 |
| 44 | dosth-happy9 | 286198006066 |
| 45 | eclipseemporium | 226490487534 |
| 46 | Fillapex | 305840914514 |
| 47 | freeafterever2013 | 276528512150 |
| 48 | FURTUE | 226481980727 |
| 49 | gallencen | 365206171272 |
| 50 | GANTY | 375783400387 |
| 51 | GlobalTech Treasures Inc | 296449924457 |
| 52 | goodlu-78 | 387691460344 |
| 53 | grevip | 146248058353 |
| 54 | guliyuk-60 | 365095703609 |
| 55 | gulopp_sre | 176647651599 |
| 56 | HANDSOME/DEAL | 126693661427 |
| 57 | HelloYoung.Store | 226443460128 |
| 58 | hkkule1015 | 256595847571 |
| 59 | HKT024 | 146246573252 |
| 60 | iedion | 286181903283 |
| 61 | imindsets1030 | 355450743099 |
| 62 | janakleesdeals | 285682974002 |
| 63 | Jessica's Botanical Boutique | 355886616760 |
| 64 | kattrodrigue5 | 135131657474 |
| 65 | latnaza_95 | 395617194134 |
| 66 | Live Love Shop Inspire | 266888466445 |
| 67 | longgov-69 | 404762547271 |
| 68 | love-iseverywhere | 156542157623 |
| 69 | lycstyle | 395506479339 |
| 70 | mathmadu-skyfree | 405292629345 |
| 71 | mazhus_3141 | 145634620801 |
| 72 | mcc-creations-llc | 316009087952 |

| 73 | MEEKY | 335728429117 |
| 74 | min561870 | 395879100099 |
| 75 | MINGJIE1 | 395906127467 |
| 76 | minhabeautystore | 135029689138 |
| 77 | naturbodi | 315813887099 |
| 78 | nbstore-nbgoods | 375859393361 |
| 79 | np-jing7654 | 315622044212 |
| 80 | np-mobile451 | 315622052851 |
| 81 | np-oppoer | 387571946285 |
| 82 | np-shua3953 | 226432515899 |
| 83 | onedudeshop | 326168615846 |
| 84 | ousshop-only-for-you | 315036672858 |
| 85 | pineappleninja | 196472518630 |
| 86 | POW-SALE | 156563183581 |
| 87 | pure-store_12 | 316021857541 |
| 88 | QC THE MARKET | 156137900011 |
| 89 | Qwick Stop | 395729865140 |
| 90 | RetailTherapy708 | 266635602741 |
| 91 | roee20006 | 386474456664 |
| 92 | romakha_93 | 305751750781 |
| 93 | S&J Daily Discounts | 176287897899 |
| 94 | securzzzshop | 355958824054 |
| 95 | sehasi4998 | 355753500211 |
| 96 | sharppointedthings | 167011058387 |
| 97 | shelliyode_0 | 316024740319 |
| 98 | SIMONE_MARKET16 | 286137003895 |
| 99 | SmartChoice Trend | 404805172472 |
| 100 | supermarket-k | 335668263590 |
| 101 | syedaze-0 | 364965765598 |
| 102 | syfat33 | 375589683811 |
| 103 | The.Urban.Essentials | 305967114200 |
| 104 | thevitaminshop23 | 364977067041 |
| 105 | three-3brothers-inc | 316029104048 |
| 106 | toqirshah | 335340705234 |
| 107 | trendystickers | 166853155432 |
| 108 | uclickishipfl | 135121237828 |
| 109 | uriote_19 | 365282408535 |
| 110 | uroabdul_0 | 355827638688 |
| 111 | viseni-saUser ID | 156493635728 |

| 112 | Wei_147756 | 395899597275 |
| 113 | WestCoastGoodz | 186711040087 |
| 114 | wingsolutions | 375336761304 |
| 115 | Worldmart Wholesale | 335330796273 |
| 116 | xemenry_naturals | 365265093423 |
| 117 | xili-9015 | 356323159319 |
| 118 | xuetielonglonglong | 296829699769 |
| 119 | ya_124382 | 395903176388 |
| 120 | yeroses198 | 356266388673 |
| 121 | youmissfheerh | 286200145233 |
| 122 | yuminxusstore | 235798550318 |
| 123 | zaranew | 326034856132 |
| 124 | zubairqu-87 | 126701092634 |
| 125 | ANAN Foods | 634418217692026 |
| 126 | ANAN health care | 634418217690379 |
| 127 | ANAN Healthy | 634418217628703 |
| 128 | ANAN Makeup | 634418217690734 |
| 129 | Baisi Le Seeds | 635517728503399 |
| 130 | BlessMeet | 634418219520027 |
| 131 | DINJOO A | 634418218344903 |
| 132 | Good Shop of Mr Zheng | 634418216748874 |
| 133 | HealthBrew Essentials | 634418219505616 |
| 134 | HUAFFEI | 634418216253434 |
| 135 | Jack shopping mall | 634418216613378 |
| 136 | Jack Sky Mall | 634418217796393 |
| 137 | Moon Cloud | 634418215635623 |
| 138 | RTBLE direct | 634418217952169 |
| 139 | S580504'shop | 635517731206406 |
| 140 | SHICHUAN | 634418215118682 |
| 141 | SHIPINYAO | 634418215007808 |
| 142 | SLWLKJ | 634418216712445 |
| 143 | UGTM | 635517728726664 |
| 144 | Zorn Sky Mall | 634418217921817 |
| 145 | A C Masters SA | 618997dcdd5db06c0bd21057 |

## <u>LISTING OF EXHIBITS</u>

**Exhibit 1** ................................Photographic Comparison of genuine Products and  Infringing Products.

**Exhibit 2** ................................Screenshots of Plaintiff's Amazon and Web Stores.

**Exhibit 3A** .............................U.S. Copyright Reg. No. TX 9-367-638 and Deposit Copy of Photograph

**Exhibit 3B** .............................U.S. Copyright Reg. No. TX 9-388-519 and Deposit Copy of Photograph

**Exhibit 3C** .............................U.S. Copyright Reg. No. TX 9-388-522 and Deposit Copy Photograph

**Exhibit 3D** .............................U.S. Copyright Reg. No. TX 9-388-523 and Deposit Copy Photograph

**Exhibit 3E** .............................U.S. Copyright Reg. No. TX 9-389-848 and Deposit Copy Photograph

**Exhibit 3F** .............................U.S. Copyright Reg. No. TX 9-389-849 and Deposit Copy Photograph

**Exhibit 3G** .............................U.S. Copyright Reg. No. TX 9-394-790 and Deposit Copy Photograph

**Exhibit 4A** .............................U.S. Reg. No. 7031116

**Exhibit 4B** .............................U.S. Reg. No. 7031117